UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BRANDON BARTLETTE, KEITH SIMPSON, CHRIS FORD and CEDRIC ROBINSON,<br><br>     **Plaintiffs,**<br><br>vs.<br><br>**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS; WARDEN JOSEPH MCFADDEN, individually and/or in her official capacity as warden of Lieber Correctional Institution; CORRECTIONAL OFFICER DENNIS, individually and/or in his official capacity as an employee of SCDC; CORRECTIONAL OFFICER KELLY, individually and/or in his official capacity as an employee of SCDC; and CORRECTIONAL OFFICER MCKIE, individually and/or in his official capacity as an employee of SCDC,**<br><br>     **Defendants.** | C/A No.: 2:17-cv-3031-RMG-MGB |

**PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT AND STAY OF DISCOVERY**

  The Defendants, the South Carolina Department of Corrections, Warden Joseph McFadden individually and/or in his official capacity as Warden at Lieber Correctional Institution, Correctional Officer Dennis individually and/or in his official capacity as an employee of SCDC; Correction Officer Kelly individually and/or in his official capacity as an employee of SCDC; and Correctional Officer McKie individually and/or in his official capacity as an employee of SCDC have moved to dismiss the actions filed by each Plaintiff pursuant

to <u>Fed. R. Civ. Pro.</u> 56 and the Prison Reform Litigation Act. The Defendants also move to stay discovery on the merits pending the outcome of Summary Judgment. At a hearing held on June 6, 2019 the Honorable Mary Gordon Baker denied Defendant Motion to Stay Discovery. As such Plaintiffs only address Defendant Motion for Summary Judgment.

The Plaintiffs, Brandon Bartlette, Keith Simpson, Chris Ford, and Cedric Robinson oppose this motion for the reasons hereinafter stated.

**STATEMENT OF FACTS**

The South Carolina Department of Corrections (SCDC) operates the Lieber Correctional Institution in Dorchester County, South Carolina. Defendant Warden McFadden at all times pertinent to the Complaint, were "charged with the management of all staff regarding hiring, training, promotion, discipline, evaluation and firing; maintaining a safe working environment; monitoring compliance with all state policies and procedures; overseeing prison programs in education, mental health and infirmary; enforcing rules, regulations, policies, and laws regarding incarceration and employee conduct; enforcing policies regarding intake, classification, treatment programs and discipline; [and] maintaining a proper system for the proper care, humane treatment, feeding, clothing, and safety of inmates." (Complaint, para. 13-22).

Plaintiffs Brandon Bartlette, Keith Simpson, Chris Ford, and Cedric Robinson are inmates in the SCDC system who were incarcerated in Lieber Correctional Institution in 2016 and 2017. During this period and continuing to the present the Defendants and the correctional staff at Lieber Correctional Institution have failed to take even the most basic steps to protect inmates from physical assault by other inmates, including members of prison gangs. These Defendants have failed to take any meaningful steps to keep inmates from possessing "illegal

contraband weapons" which are often brought into the prison by guards. Even worse, guards routinely leave cell or wing doors unlocked, abandon their posts, and fail to intervene when inmate fights occur. In violation of SCDC's policies, the guards regularly allow inmates from one wing of the prison into other wings. This conduct makes it virtually impossible to protect innocent inmates from gang members harming them. Moreover, guards are often not disciplined for their violation of SCDC procedures and inmates are rarely charged, or punished, for their violent assaults.

As a result of the above failures, and specifically the failure to provide even a minimum level of security for inmates, inmates are constantly at risk of violent stabbings and beatings from other inmates, including gang members. During 2016 and 2017, many inmate stabbings and attacks occurred at Liber Correctional. The Defendants and the correctional staff at Lieber Correctional Institution, had, and still have, knowledge of these failures but are consciously indifferent to the risk posed by their conduct and the injuries that have already been suffered by many inmates. (See generally Plf. Complaint, specifically para. 13-22)(See also Plf. Expert Report- Exhibit 1).

Plaintiffs, Brandon Bartlette, Keith Simpson, Chris Ford, and Cedric Robinson, are all victims of inmate stabbings or attacks at Lieber Correctional Institution. In their Affidavits, they have summarized the circumstances in which they were attacked, the injuries they suffered, and the difficulties imposed by the Defendants to prevent them from seeking remedies. SCDC has established an Inmate Grievance System that contains procedures with which inmates are required to comply if they wish to complain about any aspect of prison life. (Pls. Ex. 1). Subject to several exceptions, the Inmate Grievance System requires inmates initially to attempt

to resolve grievances informally by filing a Request to Staff Member form. Additionally, Mr.

Anderson states informal resolution, when needed, can be achieved by:

> " 9.    Informal resolution may also be submitted through an electronic kiosk
> system.
>
> 10.Since 2014, SCDC has utilized a kiosk system (automated request to staff
> member or "ARTSM") to improve/facilitate communication between inmates and
> staff members. in addition to written Requests to Staff Members (RTSM). thereby
> reducing potential misunderstandings and allowing for the exchange of
> information. The purpose of ARTSM/RTSM is as follows: 1) serve as inmate's
> attempt at an informal resolution pursuant to the grievance policy; 2) available to
> address non-grievable  issues; and 3) cover basic complaints, i.e. legal materials,
> cold food, law books, getting questions answered - max out date, etc. Proper and
> effective communication between inmates and staff is essential to the safe. secure
> and orderly operation of facilities. Inmates and staff are jointly responsible for
> ensuring communication methods are appropriate to properly and effectively
> convey intended information and ideas to others. SCDC Policy GA-06.04. see X
> B.

(See Plf. Exhibit 4,7,9,11, para. 9-10).

Informal resolution is not required, however, when the matter involves allegations of

criminal activity. With respect to criminal activity complaints, the inmate must file Form 10-5

Step 1 within five working days of the incident:

> Inmates must make an effort to informally resolve a grievance by submitting a
> Request to Staff Member Form to the appropriate supervisor/staff within eight (8)
> working days. However, in certain cases, informal resolution may not be
> appropriate or possible (e.g. when the matter involves allegations of criminal
> activity)….If informal resolution is not possible, the grievant will complete Form
> 10-5, Step 1 which is located in common areas, i.e., living areas, libraries etc., and
> will place the form in a designated grievance drop box within five working days
> of the alleged incident.

(Pls. Ex. 2)(Inmate Grievance System, para. 13.2). Upon receipt of a criminal activity grievance,

the Inmate Grievance Coordinator must refer the criminal activity grievance "immediately" to

the Chief of the Inmate Grievance Branch for investigation by the Division of Investigations. If it

is determined that a criminal investigation is appropriate, the grievance is held in abeyance until

the criminal investigation is completed. If a determination is made that criminal investigation is

not required, the grievance is processed in accordance with the procedures applicable to non-

criminal activity grievances:

> 15.  GRIEVANCES ALLEGING CRIMINAL ACTIVITY:
> Any grievance which alleges criminal activity will be referred immediately
> to the Chief/designee, Inmate Grievance Branch. The IGC will note on the
> grievance tracking CRT screen that the grievance has been forwarded to
> the Inmate Grievance Branch for possible investigation by the Division of
> Investigations and the date on which the grievance was forwarded. The
> Chief/designee, Inmate Grievance Branch, will consult with the Division of
> Investigations to determine if a criminal investigation would be appropriate.
> If deemed appropriate, the grievance will be forwarded to the Division of
> Investigations, to be handled in accordance with applicable SCDC
> policies/procedures. The grievance will be held in abeyance until the
> Division of Investigations completes their review/investigation. If it is
> determined that a criminal investigation is not required, the grievance will
> be processed in accordance with the procedures contained herein.

(Pls. Ex. 2)(Inmate Grievance System, para. 15).

　If an inmate files a Step 1 grievance that does not involve criminal activity, the Warden

is required to respond in writing within 45 days and advise the inmate of his right to appeal to the

next level:

> 13.5 The Warden will respond to the grievant in writing (in the space
> provided on SCDC Form 10-5, Step 1), indicating in detail the rationale for
> the decision rendered and any recommended remedies. The grievant will
> also be informed of his/her rights to appeal to the next level. The Warden
> will respond to the grievant no later than 45 days from the date the
> grievance was formally entered into the OMS system by the IGC
> .
> The response will be served by the IGC to the grievant, within ten (10)
> calendar days, and the grievant will sign and date the response
> acknowledging receipt. The IGC will maintain the original grievance for
> the inmate's grievance file and a copy will be given to the inmate.

(Pls. Ex. 2)(Inmate Grievance System, para. 13.5). The inmate may then appeal by filing a Form

10.5(a) Step 2 appeal to the Inmate Grievance Coordinator within five days of receipt of the

response. The appeal is referred to the "responsible official" who is required to make a final decision within 90 days.  (Pls. Ex. 2)(Inmate Grievance System, para. 13.5).

The Plaintiffs contend that the Defendants' acted intentionally in permitting inmate gang members to have access to weapons and attack them. The assaults that occurred to each Plaintiff are criminal actions involving gang members and should be treated as such. Plaintiffs further contend that correctional officers actually colluded with gang members to facilitate some of the attacks. The Plaintiffs alternatively contend that the Defendants were consciously indifferent to the likelihood that these attacks would occur and thus violated their rights under the Constitution. Plaintiffs seek damages and injunctive relief for these violations pursuant to 42 U.S.C. § 1983. (See generally Complaint).  The Plaintiffs have also asserted state law claims for negligence.

The Defendants contend that the facts are undisputed that each Plaintiff failed to exhaust administrative remedies provided by the Inmate Grievance System and that this failure requires that their lawsuits be dismissed pursuant to Fed. R. Civ. Pro.  56. As will be seen, this motion is meritless and should be denied.

## LEGAL STANDARD

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. Brockbank v. Best Capital Corp., 341 S.C. 372, 534 S.E.2d 688 (2000); Moriarty v. Garden Sanctuary Church of God, 334 S.C. 150, 511 S.E.2d 699 (Ct. App. 1999), aff'd, 341 S.C. 320, 534 S.E.2d 672 (2000). "Because it is a drastic remedy, summary judgment should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues." Carolina Alliance for Fair Employment, 337 S.C. at 485, 523 S.E.2d at 799. Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. Carolina Alliance for

Fair Employment v. South Carolina Dep't of Labor, Licensing, and Regulation, 337 S.C. 476, 523 S.E.2d 795 (Ct. App. 1999). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment. Summer v. Carpenter, 328 S.C. 36, 492 S.E.2d 55 (1997); Pye v. Aycock, 325 S.C. 426, 480 S.E.2d 455 (Ct. App. 1997). Because summary judgment is a drastic remedy, it must not be granted until the opposing party has had a "full and fair opportunity to complete discovery." Dawkins v. Fields, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003); Lanham, 349 S.C. at 363, 563 S.E.2d at 334; Doe v. Batson, 345 S.C. 316, 322, 548 S.E.2d 854, 857 (2001); Baird v. Charleston County, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999); Baughman v. American Tel. & Tel. Co., 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991)

## ARGUMENT

**I.     DEFENDANTS MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE MATERIAL QUESTIONS OF FACT EXIST AS TO WHETHER THE INMATE GRIEVANCE SYSTEM REMEDIES WERE AVAILABLE TO THE PLAINTIFFS.**

The Defendants face a heavy burden in moving for summary judgment. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). In making this determination, all of the evidence and the inferences therefrom must be viewed in the light most favorable to the Plaintiffs. Mic Automotive, LLC v. Town of Southern Pines, 532 F.3d 369 (4th Cir. 2008).

**A.    Defendants summary judgment motion must be denied to the extent that it is based on the failure of the Plaintiffs to attempt to informally resolve their criminal activity complaints since the Inmate Grievance System does not require this.**

The Defendants initially contend that they are entitled to summary judgment because the

Plaintiffs failed to informally resolve their complaints about correctional officers allowing

inmates to attack the Plaintiff:

> Pursuant to South Carolina Department of Corrections policy, in order to complain of prison conditions, each prisoner must first attempt to informally resolve his complaint. See Anderson affidavits generally and SCDC Policy/Procedure GA-01.12, generally, and specifically section 13.2. In each of the four (4) cases here, the prisoners have failed to informally attempt to resolve their respective complaints. See Anderson affidavits generally.

(Defendants' memorandum in support of motion to dismiss/ summary judgment and stay pg. 2).

This argument is not only meritless but is ethically troubling. Both defense counsel and Inmate

Grievance Coordinator Sheldon L. Anderson have misrepresented the Inmate Grievance System

to the Court. As the Inmate Grievance System clearly provides, informal resolution is not

"appropriate" with regard to complaints about criminal activity:

> Inmates must make an effort to informally resolve a grievance by submitting a Request to Staff Member Form to the appropriate supervisor/staff within eight (8) working days. However, in certain cases, informal resolution may not be appropriate or possible (e.g. when the matter involves allegations of criminal activity)….If informal resolution is not possible, the grievant will complete Form 10-5, Step 1 which is located in common areas, i.e., living areas, libraries etc., and will place the form in a designated grievance drop box within five working days of the alleged incident.

(Pls. Ex. 2)(Inmate Grievance System, para. 13.2). To the contrary, as previously noted, when

allegations of criminal activity are involved (such as they are here), the inmate is required to file

a Step I grievance which "immediately" is referred to the Inmate Grievance Chief and the

Division of Investigations. (Pls. Ex. 2)(Inmate Grievance System, para. 15). As the Plaintiffs'

expert James Evan Akins has explained:

> "My experience reveals that the unfortunate occurrences, such as the assaults and attempted murders that occurred to each of the named Plaintiffs, serve as key indicators and warnings which reveal that the grievance delivery system is dysfunctional and not generating the intended productivity of protection and safety. As a result, the inmate population becomes distrustful and fearful of the grievance system and the staff…., In my professional opinion, in each of the Plaintiffs incidents there is a general theme of failures that present extreme barriers to the grievance process. These include, but not limited to: (1) improper guidance to inmates from prison staff regarding grievances; (2) unavailability, intimidation, threat of physical attack and violence towards inmates as well as discouragement by staff towards inmates that wish to file grievances, (3) correctional staff participating in gang activity with inmates, (4) the absence of appropriate confidentiality in the grievance process which further facilitates intimidation and violence upon the inmate that wishes to file a grievance, and (5) correctional staff violating policies and procedures which also creates the perilous origination of violence and threats. These Plaintiffs, in a prison operational context, had a reasonable intense and legitimate fear of intimidation, violence and retaliation, at the hands of SCDC employees and/or other inmates for grieving their endangerment perils…a grievance system cannot be deemed "available" as required by the PLRA if factors such as the above are present within an internal grievance system."

(Pls. Ex. 3)(Affidavit of James E. Aiken).

Accordingly, Defendants summary judgment motion must be denied to the extent that it is based on the failure of the Plaintiffs to attempt to "informally" resolve their criminal activity complaints. Viewing the evidence in the light most favorable to the Plaintiffs, informal resolution is not required with respect to the criminal activity which, is the subject of the Plaintiffs' lawsuit (assaults by gang members).

> **B.    Defendants summary judgment motion must be denied to the extent that it is based on the failure of the Plaintiffs to attempt to file Step I and II grievances because material questions of fact exist as to whether these remedies were "available".**

The Prison Litigation Reform Act does require an inmate to exhaust all *available* administrative remedies prior to filing a 42 U.S.C. § 1983 action arising from prison conditions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 <u>U.S.C.</u> § 1997e(a). As previously noted, the <u>Inmate Grievance System</u> requires inmates complaining of criminal activity to file a Step 1 grievance within five days of the incident, and a Step 2 grievance if he is dissatisfied with the resolution of his grievance. But such filing is necessary to exhaust remedies only if these remedies are "available" in the particular case.  An inmate need not exhaust administrative remedies that effectively are "unavailable" remedies, not withstanding that they are listed in the prison grievance policy.

The United States Supreme Court has defined "available" administrative remedies in this context as those remedies that are capable of use to obtain some relief for the action complained of:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust—although significantly different from the "special circumstances" test or the old CRIPA standard—has real content. As we explained in Booth, the ordinary meaning of the word "available" is " 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' "
>
> 532 U.S., at 737–738, 121 S.Ct. 1819 (quoting Webster's Third New International Dictionary 150 (1993)); …Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." <u>Booth</u>, 532 U.S., at 738, 121 S.Ct. 1819.

<u>Ross v. Blake</u>, 135 S.Ct. 1850, 1858-59 (2017). The Court has identified three categories where administrative remedies, although on the books, are not "available" within the meaning of the statute. First, an administrative procedure is "unavailable" when correctional officers are unable, or unwilling, to provide any relief to the inmate:

> First, … an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates….. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then

> "capable of use" for the pertinent purpose. In Booth 's words: "[S]ome redress for
> a wrong is presupposed by the statute's requirement" of an "available" remedy;
> "where the relevant administrative procedure lacks authority to provide any
> relief," the inmate has "nothing to exhaust." … So too if administrative officials
> have apparent authority, but decline ever to exercise it. Once again: "[T]he
> modifier 'available' requires the possibility of some relief." … When the facts on
> the ground demonstrate that no such potential exists, the inmate has no obligation
> to exhaust the remedy.

135 S. Ct at 1859. Second, an administrative procedure is "unavailable" when it is so confusing

no reasonable prisoner can make sense of what it demands:

> Next, an administrative scheme might be so opaque that it becomes, practically
> speaking, incapable of use. In this situation, some mechanism exists to provide
> relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General
> put the point: When rules are "so confusing that ... no reasonable prisoner can use
> them," then "they're no longer available." Tr. of Oral Arg. 23. …When an
> administrative process is susceptible of multiple reasonable interpretations,
> Congress has determined that the inmate should err on the side of exhaustion. But
> when a remedy is, in Judge Carnes's phrasing, essentially "unknowable"—so that
> no ordinary prisoner can make sense of what it demands—then it is also
> unavailable. …Accordingly, exhaustion is not required.

135 S. Ct at 1859.

The third category encompasses circumstances where prison officials through

machination, misrepresentation, or intimidation prevent the inmate from taking advantage of a

grievance process:

> And finally, the same is true when prison administrators thwart inmates from
> taking advantage of a grievance process through machination, misrepresentation,
> or intimidation. In Woodford, we recognized that officials might devise
> procedural systems (including the blind alleys and quagmires just discussed) in
> order to "trip[ ] up all but the most skillful prisoners." 548 U.S., at 102, 126 S.Ct.
> 2378. And appellate courts have addressed a variety of instances in which
> officials misled or threatened individual inmates so as to prevent their use of
> otherwise proper procedures. As all those courts have recognized, such
> interference with an inmate's pursuit of relief renders the administrative process
> unavailable.3 And then, once again, § 1997e(a) poses no bar.

135 S.Ct. at 1860. <u>Custis v. Davis</u>, 851 F.3d 358 (4th Cir. 2017). As will be seen, to the extent

that any Plaintiff failed timely to file a Step 1 or Step 2 grievance, these remedies were

"unavailable" within the meaning of one, or more, of the foregoing three exceptions.

As the Fourth Circuit has explained, a grievance need only be sufficient to alert a prison

to the nature of the wrong for which redress is sought:

> The main purpose of the PLRA's exhaustion requirement is "allowing a prison to
> address complaints about the program it administers before being subjected to
> suit, reducing litigation to the extent complaints are satisfactorily resolved, and
> improving litigation that does occur by leading to the preparation of a useful
> record." <u>Moore</u>, 517 F.3d at 726 (internal quotation marks omitted). Accordingly,
> to satisfy the exhaustion requirement, grievances generally need only be sufficient
> to "alert[ ] the prison to the nature of the wrong for which redress is
> sought." <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002).

<u>Wilcox v. Brown</u>, 877 F.3d 161, note 4 (4th Cir. 2017). The grievances filed thus easily met the

standard required for exhaustion. Further, even if the Plaintiffs did not in their grievances seek

specific remedies and/or policy changes designed to prevent reoccurrence of inmate attacks,

such failure would not make his grievances insufficient. As the Seventh Circuit has explained, no

prison system may require the prisoner to specify each remedy later sought in litigation:

> Thus, for example, no administrative system may demand that the prisoner
> specify each remedy later sought in litigation — for <u>Booth v. Churner</u>, 532 U.S.
> 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), holds that § 1997e(a) requires each
> prisoner to exhaust a process and not a remedy. No comparable doctrine prevents
> a prison system from requiring factual particularity in an internal grievance.

<u>David v. Strong</u>, 297 F.3d 646, 649-50 (7th Cir. 2002).

Prisoners who are functionally unable to exhaust their claims through no fault of their

own may be excused from the PLRA exhaustion requirement. *See, e.g.*, *Reyes v. Smith*, 810 F.3d

654, 658 (9th Cir. 2016); <u>Williams v. Paramo</u>, 775 F.3d 1182 (9th Cir. 2015); <u>Nunez v. Duncan</u>,

591 F.3d 1217, 1224–26 (9th Cir. 2010) ("We hold that Nunez's failure to timely exhaust his

administrative remedies is excused because he took reasonable and appropriate steps to exhaust

his Fourth Amendment claim and was precluded from exhausting, not through his own fault . . .

.”). In other words, we have recognized that the PLRA does not require exhaustion when

circumstances render administrative remedies "effectively unavailable." *Nunez*, 591 F.3d at

1226.

### 1.  As to Plaintiff Brandon Bartlette

According to Inmate Grievance Coordinator Anderson, Plaintiff Bartlette failed to

exhaust his administrative remedies. However, Mr. Anderson even agrees that SCDC failed to

provide Plaintiff Bartlette with a Step 2 grievance so he could complete the process:

> 28.    Bartlett was not offered or issued a Step 2 grievance form because the
> subject of his grievance was about non-grievable matters. Inmate Grievance
> Coordinator returned his grievance. If Bartlette had not agreed with Inmate
> Grievance Coordinator decision to return his grievance, Bartlette could have
> appealed that decision directly to me. Branch Chief. SCDC Policy/Procedure GA
> 01.12 § 13.3 (see X A) allows inmates to appeal IGC decisions directly to the
> Branch Chief within ten (10) days of the grievance being returned to the inmate.
> Bartlette did not appeal the IGC's decision. Bartlette failed to properly follow the
> grievance process regarding matters asserted in his complaint.

(Pl. Ex 4 Affidavit of Sheldon L Anderson, para 28).

As previously noted, SCDC policy does not require Plaintiff Bartlette to informally (file a

Request to Staff) resolve his grievance about the assault he suffered. Nor does the Inmate

Grievance System require an inmate to request protective custody. Hence, these assertions do not

entitle the Defendants to summary judgment.

With respect to Plaintiff Bartlette failure to timely file a Step 1 and Step 2 grievance, this

failure is excused for purposes of summary judgment insofar as material questions of fact exist

as to why Plaintiff Bartlette failed to file these grievances. (Pls. Ex. 5 Affidavit of Plaintiff

Bartlette). According to SCDC policy Plaintiff Bartlette's next step in the grievance process is to

file a Step 2 grievance however he was prohibited from obtaining this form based upon SCDC's

erroneous decision that his first grievance was not a grievable issue. This is troubling considering

Bartlette's' kiosks and grievances specifically state the following:

> "WARDEN MCFADDEN ON APRIL 17TH 2017 I WAS ATTACK.ED BY
> SEVERAL INMATES AND STABBED SEVERAL TIMES. OFC BUTLER
> WAS IN CHARGE OF ASHLEY A. HE UNLOCK.ED THE DOORS AT 6AM
> THAT MORNING AN LEFT ALL DOORS UNLOCK.ED UNTIL COUNT A
> HOUR OR TWO LATER. AT OR SOON AFTER MY DOOR WAS
> UNLOCKED A INMATE RAN IN MY ROOM AS STABBED ME AND RAN
> OUT MY ROOM NOT REALLY KNOWING I WAS STABBED UNTIL THE
> SECOND HALF OF THE SITUATION CAME I CAME OUT TO FIND OUT
> WHY THIS PERSON DID THIS AND CAUGHT THE SEC. HALF
> APPARENTLY, AT MY ATTEMTP TO RESSOLVE THIS MATTER I WAS
> EMERG. TRANSPORTED TO TRIDENT HOSPITAL FOR MY WOUNDS AN
> LUNGS. THE FAILURE TO SECURE THE CELL DOORS IS A DIRECT
> VIOLATION TO SECURITY PROCEDURES ESPECIALLY WITH THE
> LACK OF STAFF WHICH CELL DOORS BE LOCKED AND ROUNDS BE
> MADE HOURLY TO UNLOCK DOORS..NOW IM IN WANDO A/B IT
> SEEMS MORE LIKE WHAT THE SECURITY IS SUPPOSED TO BE IM A
> LEVEL 2 AND HERE FOR AREA MENTAL HELATH IM SAFE NOW AS I
> FEEL BUT JUST HAVINO A FEW PAIN ISSUES BUT IVE ALSO WROTE
> MED 4 THAT."

> "MS. DISBROW.IM FILING THIS GRIEVANCE IN REGARDS TO A
> INCIDENT THAT HAPPEN TO ME WHERE I WAS ATTACKED IN MY
> ROOM BECAUSE MY ROOM DOOR WAS POPPED AT 6AM OR BEFORE
> IN THE ASHLEY A UNIT ON OR ABOUT 4-17-17 THE WING OFFICER
> POPPED THE DOORS AND LEFT THEM OPEN FOR HOURD AND FAILED
> TO SECURE THE DOORD WHICH RESULTED IN A SERIOUS MANNNER
> OF ME BEING HURT OK AAND NOW ASLO MY FAMILY WQAS NEVER
> CONTACTED BY ADMINISTRATION AND MADE AWARE THAT I WAS
> HURT AND AT THE HOSPITAL THIS INCIDENT WAS A SERIOUS
> MATTER LIFE THREATENING MY LUNGS CALLAPSED IN THE COURSE
> OF ME BEING WOUNDED DUE TO THE FAILURE TO SECURE THE
> WING DOORS IN ASHLEY A CELL 22..... IM MAKING THIS NOTICE
> BECAUSE THAT COULD RESULT IN MULIPLTE
> PROBLEMS I COULD HAVE BEEN KILLED BUT IM NOT...I WAS
> ATTACKED IN MY ROOM THIS MORNING AND THE ALTERCATION
> ENDED WHEN I WAS ATTACKED AGAIN AND TRANSFERRED TO
> TRIDENT MEMORIAL HOSPITAL WITH 6 STAB WOUNDS ...THE WINF
> DOORS NOT BEING ECURED IS VERY IMPORTANT WITH THE LACK
> OF SECURITY PERSONEL."

> "On 4-17-17 or approx.. I was attacked in my cell early morning while still in bed
> asleep after officers came and unlocked all cell doors at approx. 5:30-7:30am and

continued to leave them unlocked, under the lack of security and I was attacked and tried to get help but at the time officer wasn't around after or during the altercation where I was stabbed and wrapped by myself and someone else because, I couldn't breath ...I made it to medical and found out I had a punctured lung and was rushed to trident where I stayed a few days with a chess tube to inflate my lung and to drain the blood that bleed on the inside. I fit wasn't for my roommate I prolyl would have been stabbed to death ....I don't understand why I'm here and not at Kirkland Correctional or back on my level 2 I'm ME-2 I came from Tyger River Corrections ......before Lee County....Kiosk response 4/26/l 7-c0534696 reference# Action Requested: To be transferred to a level 2 and either Tyger River or Allendale Corrections...handle in courts or civil restitual agreement. through the attny' s... see mental health get back to schooling and need victim Rule 5 in this matter ....non-violent Institution ..."

(Pls. Ex. 5 Affidavit of Plaintiff Bartlette)[1].

SCDC grievance policy states the following are grievable issues: "§7.l Department policies/procedures .directives. or conditions which directly affect the inmate; §7.2 Actions of a staff member toward the inmate; §7.3 Actions of an inmate against and inmate; §7.4 1nmate property complaints; §7.5Disciplinary hearings; §7.6 any classification decision that directly affects the inmate's custody level and: §7.7 calculation of sentence-related credits." (See Plf. Exhibit 2). Plaintiff Bartlette's above grievances specifically fall under sections 7.1 and 7.2 because he states that an officer was not around to help him (which is a violation of SCDC's policy and procedures); and section 7.3 because he stated he was assaulted by other inmates.

Furthermore Plaintiff Bartlette's grievance specifically tells the Defendants a criminal event occurred, an assault. Mr. Anderson's argument that Plaintiff Bartlette should not have been given a Step 2 grievance is inaccurate and is evidence that he specifically and intentionally prohibited Plaintiff Bartlette from the grievance process making it unavailable to him. Mr. Anderson inaccurately states that Plaintiff Bartlette could have appealed the decision. However

---

[1] While at Lieber Correctional Counsel had some difficulties getting Plaintiff Bartlette's Affidavit signed. As such an unsigned version has been submitted and a signed copy will be supplemented upon receipt.

in order to appeal the decision the next step would be to appeal based on filing his Step 2

grievance, however he was intentionally refused this form.

Plaintiff Bartlette states in his Affidavit the following:

12.    Following the assault I was at the hospital until April 19, 2017 and within days of coming back filed my grievance on the kiosk regarding this incident.

13.    On April 25, 2017 I filed my kiosk grievance to Warden McFadden specifically explaining the events of my assault.

14.    On May 25, 2019 I received a response that my case was currently being investigated and it was an active/open case an there was nothing else they could do for me.

15.    On April 26, 2019 I submitted another kiosk asking for assistance and explaining the events of my assault. I was informed that I can't file a grievance through the kiosk system and must complete a form.

16.    Upon receiving this information I requested a Step 1 grievance on several occasions from SCDC officials. They refused to provide me the forms. As soon I was given the form I submitted my grievance.

17.    On May 12, 2017 I submitted my Step 1 grievance explaining my assault in detail. On May 30, 2017 SCDC stated my grievance was not being processed and they refused to provide me a Step 2 grievance form.  Step 2 grievance forms are not available except from the Inmate Grievance Coordinator when the Step 1 grievance is denied.

18.    The issue raised in my Step 1 grievance was a grievable issue and specifically stated that I was stabbed due to lack of security and that the officer was not on the wing.

(Pls. Ex. 5 Affidavit of Plaintiff Bartlette para. 12-18).

Despite Plaintiff Bartlette's attempts, it was through no fault of his own that he could not exhaust

his administrative remedies, thus making the Inmate Grievance System unavailable to him as

defined by the Court in Ross and Booth.

Accepting Plaintiff Bartlette sworn testimony as true, as the Court must do on summary

judgment, the SCDC administrative remedies were "unavailable" to Plaintiff Bartlette within the

meaning of Ross v. Blake and Rodriguez v. County of Los Angeles, No. 13-56292, No. 14-

55374 (9th Cir. May 30 2018) (Pls. Ex. 6-Rodriguez Case). Viewing the evidence and inferences

therefrom in the light most favorable to the Plaintiff, there is at very least a question of fact as to

16

whether Plaintiff Bartlette's delay in filing was due to the Defendants conduct and the grievance system not being available to him. Summary judgment accordingly must be denied as to Plaintiff Bartlette.

### 2.   As to Plaintiff Keith Simpson

According to Inmate Grievance Coordinator Anderson, Plaintiff Simpson failed to exhaust his administrative remedies.

> 25.    Records indicate Simpson successfully completed Step 1 of the grievance process. However. Simpson did not continue the process by filing a Step 2 grievance form. as required by policy. Simpson failed to properly exhaust his administrative remedies. While Simpson briefly mentions his alleged assault in his grievances, it is clear the real issue he is addressing in his grievances is staffing levels. Simpson does not address failure to protect or inadequate medical care.

(Pl. Ex 7Affidavit of Sheldon L Anderson, para 25).

As previously noted, SCDC policy does not require Plaintiff Simpson to informally (file a Request to Staff) resolve his grievance about the assault he suffered.  as Mr. Anderson erroneously informed this court. (See Plf. Ex. 6, para. 21). Nor does the <u>Inmate Grievance System</u> require an inmate to request protective custody. Hence, these assertions do not entitle the Defendants to summary judgment.

With respect to Plaintiff Simpson failure to timely file a Step 1 and Step 2 grievance, this failure is excused for purposes of summary judgment insofar as material questions of fact exist as to why Plaintiff Simpson failed to file these grievances. Mr. Anderson agrees that Plaintiff Simpson filed a proper Step 1 grievance however states he failed to file a Step 2. As previously indicated, Plaintiff Simpson could only obtain a Step 2 grievance form from the Inmate Grievance Coordinator if his Step 1 was properly processed. Specifically Plaintiff Simpson states:

13.     On May 18, 2016 I submitted my Step 1 grievance explaining my assault in detail.

14.     On May 19, 2016 my Step 1 grievance was returned to me unprocessed because they stated I failed to file a Request to Staff Form. According to policy I do not have to file a Request to Staff Form since I was assaulted.

15.     On May 21, 2016 I submitted a grievance on the kiosk to Security again explaining how I had been assaulted and the security concerns I had. SCDC's response did nothing to help me with my assault but instead stated they are looking for more people to hire and it is not easy to find people to work in a prison.

16.     On June 6, 2016 I submitted another grievance about my assault. I again explained in detail what happened and explain the policy violations that had occurred. I received a response that my concerns could not be substantiated and my grievance was denied.

17.     It is troubling that my concerns could not be substantiated considering I was transferred to MUSC for medical attention for a beating and stab wounds, an incident report should have been created, and MINS note should have been completed.

18.     I successfully completed several grievances including a Step 1 grievance, however, you cannot obtain a Step 2 grievance unless the Inmate Grievance Coordinator gives you this form. SCDC refused to provide me with this form because they stated my previously filed grievances were unprocessed.

19.     SCDC has intentionally prohibited me from filing my Step 2 grievance in this matter and made the grievance process unavailable by refusing to give me a Step 2 grievance form. SCDC does this by returning a grievance as unprocessed rather than as denied.  SCDC's position is that an unprocessed grievance cannot be appealed by the filing of a Step 2 grievance so no Step 2 grievance form is provided by the Inmate Grievance Coordinator.

(Pls. Ex. 8 Affidavit of Plaintiff Simpson para. 13-19).

Despite Plaintiff Simpson's attempts, it was through no fault of his own that he could not exhaust his administrative remedies, thus making the Inmate Grievance System unavailable to him as defined by the Court in Ross and Booth.

Accepting Plaintiff Simpson's sworn testimony as true, as the Court must do on summary judgment, the SCDC administrative remedies were "unavailable" to Plaintiff Simpson within the meaning of Ross v. Blake and Rodriguez v. County of Los Angeles, No. 13-56292, No. 14-55374 (9th Cir. May 30 2018) (Pls. Ex. 5-Rodriguez Case). Viewing the evidence and inferences therefrom in the light most favorable to the Plaintiff, there is at very least a question of fact as to

whether Plaintiff Simpson's delay in filing was due to the Defendants conduct and the grievance system not being available to him. Summary judgment accordingly must be denied as to Plaintiff Simpson.

### 3.  As to Plaintiff Chris Ford

According to Inmate Grievance Coordinator Anderson, Plaintiff Ford failed to exhaust his administrative remedies. Specifically he states:

> 22.  Based upon the records available for Ford, he failed to make any Request to Staff Member or filed any Step I Grievance regarding his complaints of failure to protect from inmate on inmate violence, use of excessive force by staff. or the failure to provide proper medical treatment and/or negligence. With regards to the failure to protect from inmate on inmate violence. it appears that at no time did Plaintiff request protective custody prior to his alleged assault.

(Pl. Ex 9 Affidavit of Sheldon L Anderson, para 22).

As previously noted, SCDC policy does not require Plaintiff Ford to informally (file a Request to Staff) resolve his grievance about the assault he suffered. Nor does the Inmate Grievance System require an inmate to request protective custody. Hence, these assertions do not entitle the Defendants to summary judgment.

With respect to Plaintiff Ford 's failure to timely file a Step 1 and Step 2 grievance, this failure is excused for purposes of summary judgment insofar as material questions of fact exist as to why Plaintiff Ford failed to file these grievances. Specifically Plaintiff Ford states:

> 12.  Following the assault I was at the hospital until May 29, 2016 and when I returned I was sent to lock up where I have no access to kiosks and must rely on the SCDC staff to provide me with grievance forms.
> 13.  Police Services closed their file before I even returned from the hospital and I was informed by SCDC officials my case was closed and nothing further could be done.
> 14.  When I returned from the hospital I requested grievance forms on several occasions from SCDC officials. However they refused to provide me the forms. Being in lock up you are dependent upon the SCDC officials to give you grievance forms.

16.    SCDC intentionally prohibited me from obtaining grievance forms and made the grievance process unavailable to me.

(Pls. Ex. 10 Affidavit of Plaintiff Ford para. 12-14,16).

Despite Plaintiff Ford's attempts, it was through no fault of his own that he could not exhaust his administrative remedies, thus making the Inmate Grievance System unavailable to him as defined by the Court in Ross and Booth.

Mr. Anderson also conveniently leaves out of his Affidavit the fact that Plaintiff Ford was in lock up during this period and has to rely on the Defendant's to obtain paperwork for grievances. As seen in Plaintiff's Affidavit, SCDC staff has continuously refused to provide Plaintiff Ford with either a Request to Staff Member or a Step 1 grievance. Accepting Plaintiff Ford's sworn testimony as true as the Court must do on summary judgment, the SCDC administrative remedies were "unavailable" to Plaintiff Ford within the meaning of Ross v. Blake and Rodriguez v. County of Los Angeles, No. 13-56292, No. 14-55374 (9th Cir. May 30 2018). Viewing the evidence and inferences therefrom in the light most favorable to the Plaintiff, there is at very least a question of fact as to whether Plaintiff Ford's delay in filing was due to the Defendants conduct and the grievance system not being available to him. Summary judgment accordingly must be denied as to Plaintiff Ford.

### 4. As to Plaintiff Cedric Robinson

According to Inmate Grievance Coordinator Anderson, Plaintiff Robinson failed to exhaust his administrative remedies. Specifically Anderson states:

22.    Based upon the records available for Robinson, he failed to make any Request to Staff Member or file any Step 1 Grievance regarding matters asserted in his Complaint of failure to protect from inmate on inmate violence, use of excessive force by staff, or the failure to provide proper medical treatment and/or negligence. With regards to the failure to protect from inmate on inmate violence. it appears that at no time did Plaintiff request protective custody prior to his alleged assault.

27.     As stated above in 21. records indicate Robinsons' alleged incident occurred April 20.2016. He failed to make any attempt to 'make an effort' to informally resolve a grievance by submitting a Request to Staff Member [SCDC Fom119-11]' or ARTSM through the kiosk to the proper staff member regarding any concerns in his Complaint. Robinson failed to properly file any grievance/complaint regarding anything since 2013.

(Pl. Ex 11 Affidavit of Sheldon L Anderson, para 22, 27 ).

As previously noted, SCDC policy does not require Plaintiff Robinson to informally (file a Request to Staff) resolve his grievance about the assault he suffered.. Nor does the <u>Inmate Grievance System</u> require an inmate to request protective custody. Hence, these assertions do not entitle the Defendants to summary judgment.

With respect to Plaintiff Robinson 's failure to timely file a Step 1 and Step 2 grievance, this failure is excused for purposes of summary judgment insofar as material questions of fact exist as to why Plaintiff Robinson failed to file these grievances. Specifically Plaintiff Robinson states:

12.     Mr. Anderson states in his Affidavit that I failed to make any attempt to file a grievance. However this is not true.
13.     Specifically on April 30, 2016 I submitted a grievance to Warden McFadden stating that I was assaulted and that I didn't feel safe. I also explained to him that I am legally blind that I did not want to be in a dorm with violence.
14.     On May 2, 2016 I received the following response: "Inmate Robinson, There is nothing that can be done except advise you to get ready for your hearing.! Once you are charged  nothing can be done until after the hearing." This did not address my assault or my concerns for my safety.
15.     On May 2, 2016 I filed another request against stating that I was stabbed and I identified room numbers of individuals. I also explained that I needed someone to  look into it and see what you can do because it was only causing more conflict At this point I was still scared for my life.
16.     I requested grievance forms on several occasions from SCDC officials. They refused to provide me the forms.
17.     Additionally, SCDC informed me they were not going to address my concerns in their May 2, 2016 response.
18.     SCDC has intentionally prohibited me and made the grievance process unavailable by refusing to give me forms and telling me there is nothing they can do for my concerns.

(Pls. Ex. 12 Affidavit of Plaintiff Robinson para. 12-18) (See also Ex. 13).

Despite Plaintiff Robinson's attempts, it was through no fault of his own that he could not

exhaust his administrative remedies, thus making the Inmate Grievance System unavailable to

him as defined by the Court in Ross and Booth.

Viewing the evidence and inferences therefrom in the light most favorable to the

Plaintiff, there is at very least a question of fact as to whether Plaintiff Robinson's delay in filing

was due to the Defendants conduct and the grievance system not being available to him.

Summary judgment accordingly must be denied as to Plaintiff Robinson.

## As to all Plaintiffs

The treatment of the Plaintiffs filed grievance activity shows yet gain how promised

procedure operates as a "dead end".  As detailed above, the Plaintiffs have experienced similar

events by SCDC employees which made the grievance process" unavailable" to them. As

previously mentioned:

> "….an administrative procedure is unavailable when (despite what regulations or
> guidance materials may promise) it operates as a simple dead end—with officers
> unable or consistently unwilling to provide any relief to aggrieved inmates…..
> Suppose, for example, that a prison handbook directs inmates to submit their
> grievances to a particular administrative office—but in practice that office
> disclaims the capacity to consider those petitions. The procedure is not then
> "capable of use" for the pertinent purpose. In Booth 's words: "[S]ome redress for
> a wrong is presupposed by the statute's requirement" of an "available" remedy;
> "where the relevant administrative procedure lacks authority to provide any
> relief," the inmate has "nothing to exhaust." … So too if administrative officials
> have apparent authority, but decline ever to exercise it. Once again: "[T]he
> modifier 'available' requires the possibility of some relief." … When the facts on
> the ground demonstrate that no such potential exists, the inmate has no obligation
> to exhaust the remedy.

135 S. Ct at 1859.

SCDC's Inmate Grievance System was clearly unavailable because no such potential existed for the Plaintiffs to exhaust. All Plaintiffs experienced similar unavailability of the grievance process. Here the grievance procedure promised a referral to the Inmate Grievance Chief and the Division of Investigations, but in practice the Defendants refused to either refer the criminal activity grievance to the proper parties for investigation and simply denied them or refused to provide the Plaintiffs with the appropriate forms. Once again, the Inmate Grievance System accordingly was clearly unavailable within this time period because of the Defendants' wrongful conduct. As the Court in Booth stated, where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." … So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." … When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy. Here the Plaintiffs had no potential of relief, the Defendants automatically denied and/or intervened in their attempts to fully exhaust.

  To the extent the Defendants rely on the argument that the Plaintiffs should have appealed to the Administrative Law Court, this argument is also meritless. The Administrative Law Court takes the grievance process out of SCDC's hands. In essence it is an external procedure that is not part of SCDC. The Administrative Law Court usually concludes that it cannot extend jurisdiction over an internal prison matter. See e.g. Lyles vs SCDC, Docket no. 16-ALJ-04-0685-AP (Oct. 13, 2016) (Stating "Consequently, the ALC cannot and should not extend its jurisdiction over an internal prison matter. See Al-Shabazz v. State, 338 S.C. 354, 382, 527 S.E. 2d 742, 757 (2000) (citing Pruitt v. State, 274 S.C. 565, 567- 68, 266 S.E.2d 779, 780

(1980)) and <u>Howard v. S.C. Dep't of Corr.</u>, 399 S.C. 618, 733 S.E.2d 211(2012)). Thus, yet

again, leaving the Plaintiffs at a dead end and making the grievance process unavailable

On summary judgment the Court must accept Plaintiffs version of the facts and thus

Defendants summary judgment motion must be denied to the extent the Defendants claim the

Plaintiffs failed to exhaust administrative remedies.

## II.    THE PROPERLY FILED GRIEVANCES BY OTHER INMATES AT LIEBER CORRECTIONAL INSTITUTION EXHAUSTED ADMINISTRATIVE REMEDIES FOR THE PLAINTIFFS AS A MATTER OF LAW.

As the Fourth Circuit has explained on several occasion, the main purpose of the PLRA's

exhaustion requirement is to allow "a prison to address complaints about the program it

administers before being subjected to suit, reducing litigation to the extent complaints are

satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a

useful record." <u>Moore v. Bennette</u>, 517 F.3d 717, 726 (4th Cir. 2008). Consequently, "[i]n order

to exhaust their remedies, prisoners need not file multiple, successive grievances raising the

same issue (such as prison conditions or policies) if the objectionable condition is

continuing….Thus, once a prison has received notice of, and an opportunity to correct, a

problem, the prisoner has satisfied the purpose of the exhaustion requirement." <u>Wilcox v. Brown</u>,

877 F.3d 161, note 4 (4th Cir. 2017) quoting <u>Turley v. Rednour</u>, 729 F.3d 645 650 (7th Cir.

2013).

In 2015, 2016, and 2017 others inmates have filed grievances complaining that the

wardens and the correctional officers at Lieber Correctional Institution have permitted inmates to

have access to weapons, have failed to provide even minimum security to protect inmates from

gang member inmates, and have been deliberately indifferent to the risk of harm inmates face

from gang member inmates. These inmates further allege that they suffered beatings and

stabbings as a consequence of these failures by the wardens and correctional officers. Thus all grievances that were filed prior to the assaults suffered by the seven Plaintiffs in this case, put SCDC on notice of the issues that have been occurring and has given them years to correct this ongoing and repetitive problem.

Specifically, the Plaintiffs are aware of several inmates at Lieber Correctional and also in other SCDC facilities that have been grieving about these same issues for years, but yet have continuously been denied access, punished, or retaliated against when using the grievance system. SCDC has been on notice of the violent assaults and policy violations for a long time and still has yet to remedy the situation. Inmates have tried to remedy the issues surrounding gang violence, but when they file grievances it has resulted in more attacks or leads them to a dead end. The Affidavit of James Evan Aiken provides a good summary of how gang inmate violence has been on ongoing problem at Lieber Correctional Institution for years. (See Plf. Ex 3- Affidavit of James Evan Aiken). The Court can also take judicial notice that SCDC has been sued *over 160 times* since 2015 for allowing uncontrolled gang violence in Lieber Correctional Institution and other prisons in the system:

> Inmates complained in lawsuits that South Carolina's prisons are home to "uncontrolled violence," where there are far too few guards, cells are left unlocked and gangs "run free and commit whatever crimes they want within the institution without fear of punishment," according to some of the 160-plus lawsuits filed against the state Department of Corrections since 2015.

https://www.usatoday.com/story/news/2018/04/30/prison-riots-and-killings-rising-states-slash-budgets-guards/545299002/

In short, the uncontrolled gang violence at SCDC *is an on-going problem that is well known and has been well known to the Defendants since 2015.* Rather than address and cure the problem, the Defendants are shamefully and knowingly using the PLRA exhaustion requirements to block injured inmates – most of who fear for their lives if they file a grievance because the

grievances are not being kept confidential – from filing suit. This shameful use of the PLRA is obviously not what Congress intended when it made exhaustion mandatory for inmates.

Although the Fourth Circuit in <u>Wilcox</u> was addressing single prisoners, the rationale of its ruling -  "[i]n order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." " <u>Wilcox v. Brown</u>, 877 F.3d 161, note 4 (4th Cir. 2017) quoting <u>Turley v. Rednour</u>, 729 F.3d 645 650 (7th Cir. 2013) – is equally applicable when, as here,  one or more prisoners files a grievance complaining of uncontrolled inmate violence at Lieber Correctional Institute. That grievance should exhaust administrative remedies for other inmates at Lieber complaining about the exact same thing since it has put SCDC and Lieber Correctional on proper notice.

The Plaintiffs accordingly respectfully submit that the properly filed grievances by the exact same on-going problem of uncontrolled gang violence at Lieber exhausted administrative remedies for each of the instant Plaintiffs as a matter of law. The summary judgment motion should also be denied for this reason.

**III.    DEFENDANTS ARGUMENT TO  DISMISS PLAINTIFF'S COMPLAINT MUST BE DENIED BECAUSE AN INMATE'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES DOES NOT DEPRIVE THE COURT OF SUBJECT MATTER JURISDICTION.**

The Defendants claim that the Court lacks subject matter jurisdiction over this action. This claim is meritless. The Plaintiffs have filed claims under 42 U.S.C. § 1983 for violation of rights secured by the Constitution. Title 28 vests federal district courts with subject matter jurisdiction over any action arising under the Constitution or federal statute:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. (See 28 U.S.C. § 1331).

Even assuming arguendo that the Defendants are correct that, under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), the Plaintiffs were required to but failed to exhaust administrative remedies prior to filing suit, such failure would not impact the Court's subject matter jurisdiction in any manner. A failure to exhaust administrative remedies under the PLRA is an affirmative defense that has nothing to do with subject matter jurisdiction. Jones v. Bock, 549 U.S. 199, 216 (2007)("[w]e conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"). See also Moore v. Bennette, 517 F.3d 717, 719 (4th Cir. 2008)(emphasis added)(noting that "the Supreme Court [has] decided that failure to exhaust available administrative remedies is an affirmative defense, not a jurisdictional requirement).

## CONCLUSION

For the reasons stated, Defendants Motion for Summary Judgment should be denied as to each Plaintiff.

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

s/ *J. Edward Bell, III*
 J. Edward Bell, III (1280)
 Victoria S. H. Knight (2257)
 Gabrielle A. Sulpizio
(12715) 219 North Ridge
Street  TEL.:(843)546-2408
FAX: (8430 546-9604
ebell@edbelllaw.com

**ATTORNEYS FOR PLAINTIFFS**

June 18, 2019
Georgetown, South Carolina