# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Keith Simpson, <br><br> v. <br><br> South Carolina Department of Corrections, *et al.* | Civil Action No. 2:19-2245-RMG <br><br> **ORDER AND OPINION** |
| Brandon Bartlett <br><br> v. <br><br> South Carolina Department of Corrections, *et al.* | Civil Action No. 2:17-3031-RMG <br><br> **ORDER AND OPINION** |
| Chris Ford <br><br> v. <br><br> South Carolina Department of Corrections, *et al.* | Civil Action No. 2:19-2246-RMG <br><br> **ORDER AND OPINION** |
| Cedric Robinson, <br><br> v. <br><br> South Carolina Department of Corrections, *et al.* | Civil Action No. 2:19-2247-RMG <br><br> **ORDER AND OPINION** |

Before the Court is the Magistrate Judge's Report and Recommendation ("R & R") that Defendants' motion for summary judgment for failure to exhaust administrative remedies be granted in part and denied in part. (Dkt. No. 31.)[1] For the reasons set forth below, the Court adopts the R & R as the order of the Court to grant in part and deny in part Defendants' motion.

---

[1] Citations are to the *Simpson v. South Carolina Department of Corrections, et al.*, 2:19-cv-2245 docket.

1

I.  **Background**

These actions are brought by incarcerated persons who allege they were injured by inmate stabbings or attacks at Lieber Correctional Institution ("Lieber") in 2016 to 2017. Plaintiffs allege that Lieber has a policy and practice of understaffing correctional officers, failing to keep weapons away from inmates, and allowing inmates to move freely within Lieber, in violation of South Carolina Department of Corrections ("SCDC") policy, Plaintiffs' constitutional rights under 42 U.S.C. § 1983, and the South Carolina Tort Claims Act ("SCTCA"). (Dkt. No. 2 ¶¶ 13-22.) These actions were assigned to the Magistrate Judge for all pretrial proceedings, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73(B)(2)(d), D.S.C. After hearing Defendants' arguments on the issue, the Magistrate Judge issued an order severing the claims into these separate actions (Dkt. No. 1), which this Court affirmed (Dkt. No. 34).

II. **Legal Standard**

A.  **Review of the R & R**

The Magistrate Judge makes only a recommendation to the Court that has no presumptive weight and, therefore, the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In the absence of objections, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation."). Where there are specific objections to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

## B. Motion for Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact" and it is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment should therefore be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-movant must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. For this showing, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## III. Discussion

### A. The Prison Litigation Reform Act and SCDC Grievance Process

Defendants move for summary judgment on the basis that Plaintiffs failed to satisfy the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") before bringing suit. The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit under § 1983. 42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

3

are available are exhausted."); *see also Anderson v. XYZ Corr. Health Servs.*, 407 F.3d 674, 677 (4th Cir. 2005). The administrative remedies are dictated by the prison. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). A prison grievance procedure is "available" if it is "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 136 S.Ct. 1850, 1855 (2016).

The PLRA, therefore, has a "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. The prisoner bears the burden of demonstrating that an administrative remedy is unavailable. *See Graham v. Gentry*, 413 F.App'x 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (internal citation omitted). Specifically, an administrative remedy is not "available"—meaning, the remedy, "although officially on the books, is not capable of use to obtain relief"—in at least three circumstances. *Ross*, 136 S.Ct. at 1859.

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Meaning, the "administrative officials have apparent authority, but decline ever to exercise it." *Id.* Second, a remedy is unavailable where the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Last, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In this situation, "officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to trip up all but the most skillful prisoners" or threaten the inmate. *Id.*

4

(internal quotation marks and citation omitted). Absent such evidence that the administrative remedy was unavailable, failure to exhaust the administrative remedies will bar actions filed under federal law. *See Woodford v. Ngo*, 548 U.S. 81 (2006).

SCDC employs an inmate grievance process that, with limited exceptions, consists of three steps. First, the inmate must attempt an informal resolution by submitting a Request to Staff Form ("RTS Form") within eight working days of the incident. If the incident involves allegations of criminal activity, an RTS Form is not required, but the inmate must file a Form 10-5 Step 1 Grievance within five days of the alleged criminal activity. Otherwise, within eight days of receiving a response to the RTS Form, the inmate must submit a Step 1 Grievance Form that attaches the answered RTS Form. If the RTS Form is not attached, the Step 1 Grievance Form will be returned to the inmate, who has five days to resubmit with the required attachment. Next, if the inmate is not satisfied with the response to his Step 1 Grievance Form, he has five days from receiving the response to appeal by submitting a checked-box on the Step 1 Grievance Form and a Step 2 Grievance Form. The SCDC's response to the Step 2 Grievance Form is considered the agency's final determination, which the inmate may appeal to the South Carolina Administrative Law Court. (Dkt. No. 4.)

**B.    Plaintiffs' Satisfaction of the PLRA Exhaustion Requirement**

It is undisputed that Plaintiffs did not themselves exhaust the administrative remedies; rather, Plaintiffs argue in part that their remedies should be deemed exhausted through unspecified "properly filed grievances by other inmates at Lieber." (Dkt. No. 5 at 24.) As the Magistrate Judge noted, there is no precedent in this Circuit, including under *Wilcox v. Brown*, 877 F.3d 161 (4th Cir. 2007), to find that other inmates' grievances satisfy another inmate's exhaustion requirement. Thus, the issue is whether the administrative remedies were unavailable

5

to Plaintiffs, including as a "dead end," such that their failure to exhaust is excused under the statute.

The record on this issue consists of: the affidavit of Sherman Anderson, Chief of Inmate Grievance Branch; the deposition testimony of Betty Thomas, Institutional Grievance Coordinator; grievances; kiosks requests; Plaintiffs' bed histories; Plaintiffs' affidavits; and the affidavit of Plaintiffs' expert, James Aiken. The Court finds that the Magistrate Judge thoroughly reviewed the record to the Rule 56 standard and appropriately concluded that there remain genuine issues of material fact as to whether administrative remedies were unavailable to Plaintiffs Bartlett and Simpson, and that no such issues remain as to Plaintiffs Ford and Robinson.

### 1. **Plaintiff Brandon Bartlett**

Plaintiff Bartlett alleges that on April 17, 2017, he was stabbed over six times by fellow inmates at Lieber as a result of correctional officers failing to lock doors and otherwise secure the area. On April 25, 2017, Bartlett submitted an Inmate Request to the Investigations Department, stating he was stabbed by several inmates on April 17, 2017 after Officer Butler unlocked doors and did not relock them for several hours, and stating that "failure to secure the cell doors is a direct violation to security procedures especially with the lack of staff." The Response Request dated April 25, 2017 stated, "This is currently being investigated by Police Services. The case is still open/active case." On April 26, 2017, Bartlett filed an Inmate Request, choosing "Grievance" as the request type and stating again that he was attacked on April 17, 2017 when an officer left doors unlocked, as well as in his room the next morning. The Response Request dated April 26, 2017 stated, "You can't file a grievance through a kiosk system. You must complete a 10-5 and place it in the grievance box."

On May 12, 2017, Bartlett submitted a Step 1 Grievance, stating he was attacked in his cell on April 17, 2017 "after officers came and unlocked all cell doors at approx. 5:30-7:30 AM and continued to leave them unlocked." Bartlett chose the "action requested" as being "transferred to a level 2 and either Tyger River or Allendale Corrections; handle in courts of civil restitutional agreement, through the attny's; see mental health get back to schooling and a non-violent institution; need victim Rule 5 in this matter." On May 30, 2017, Inmate Grievance Coordinator Betty Thomas returned a Response saying the complaint was as "non-grievable," selecting "other" chosen as the "Action Taken by IGC," and instructing that, "Any further concern discuss with Classification Caseworker." On June 1, 2017, Bartlett filed a second Step 1 Grievance relating to the April 17, 2017 stabbings and listing as the "Action Requested" that "mental health inmates" be protected from "gang affiliates" who are "not actually mental health" inmates. On June 1, 2017, Ms. Thomas provided a Response with "other" checked as the "Action Taken by IGC" and stating that Bartlett "failed to attach the answered Request to Staff Form/Automated Request to Staff" and instructing that he "may re-file the answered RTSM/ARTSM through the appropriate staff within (5) days of receiving a response. However, if you have already submitted (5) grievances for the month, the grievance will not be accepted or processed."[2]

Mr. Anderson affirms that if Bartlett disagreed with the response to his Step 1 Grievances, he should have appealed the IGC's decision pursuant to Section 13.3 of the Grievance Policy. Section 13.3 outlines how to appeal "unprocessed grievances." But, as the Magistrate Judge noted, the IGC selected "other"—not, "unprocessed"—as the action taken on the requests. Bartlett was not instructed to appeal, but rather either to contact a Classification

---

[2] As the Magistrate Judge ably noted, Bartlett's complaint of "gang affiliates" causing physical danger to mental health inmates likely makes his complaint one of "criminal activity" that would not require any attempt at informal resolution in order to satisfy the SCDC remedial policy.

7

Caseworker or re-file the Step 1 Grievance with proof of RTSM/ARTSM, not to appeal. Moreover, as Ms. Thomas testified, Bartlett was never offered a Step 2 Grievance, a prerequisite to satisfying the SCDC remedial process. Construing this record in a light most favorable to Bartlett, the Magistrate Judge appropriately determined that the reasonable fact finder could conclude the SCDC remedial process was unavailable to Bartlett. Therefore, summary judgment as to exhaustion of Bartlett's federal claims is denied.

### 2. Plaintiff Keith Simpson

Mr. Simpson alleges that, for approximately twenty minutes on May 7, 2016, he was beaten and stabbed by inmates who entered his cell after Officer Dennis walked by and did not lock the door. On May 18, 2016, Simpson submitted a Step 1 Grievance stating he was assaulted by unknown persons and that, "My grievance is why the state won't hire more personnel. If more personnel had been available, this issue possibly might not have happened. Without proper personnel in place, the state is not providing proper security for the wards of the state." On May 19, 2016, the Request Response stated "returned" and "no informal," noting that no RTSM or ATSM was attached. The Response directed Simpson to resubmit his grievance "on a new 10-5 Step 1 Grievance Form with the above mentioned requirements so your grievance may be properly investigated. If resubmitted, it must be received by MAY 24, 2016[.]"

On May 21, 2016, Simpson submitted a kiosk request stating he was assaulted and again stating, "Why the state won't hire more personnel. If more personnel had been available, this issue possibly might not have happened. Without proper personnel in place, the state is not providing proper security for the wards of the state." The June 2, 2016 Request Response stated, "We are always looking for people to hire. It's not easy trying to find the right people to work in a prison." On June 4, 2016, Simpson submitted another Step 1 Grievance, again stating he was assaulted and requesitng, "Why the state won't hire more personnel? If more personnel had been

8

available, this issue possibly might not have happened. Without the proper personnel in place, the state is not providing proper security for the wards of the state." The July 5, 2016 Request Response stated, "Your allegations of being assaulted by an unknown person cannot be substantiated. SCDC will continue to monitor security in particular and in general the issue that you have raised. Predicated on the information available, your grievance is denied. If you are not satisfied with your response, you may exercise the option that is set forth below in paragraph 5."

Simpson affirms that he requested, but was denied, a Step 2 Grievance form. Defendants assert that Mr. Thomas provided a Step 2 Grievance form to Simpson, although no record evidence supports this assertion. It is also unclear whether any informal resolution was required as to the May 18, 2016 grievance, in that a complaint of "assault" is "criminal activity." The Magistrate Judge correctly concluded that, construing this record in a light most favorable to Simpson, there remain material issues in dispute as to whether the remedial process was an unavailable "dead end" for him. Therefore, summary judgment as to exhaustion of Simpson's federal claims is denied.

### 3.  Plaintiff Chris Ford

Mr. Ford alleges that on May 26, 2016, he was stabbed and punched by inmates who entered his cell as a result of the door being unlocked and then returned to his cell after he unsuccessfully searched for a correctional officer to help. It is undisputed that Simpson did not file any informal or formal grievances. He affirms that he "requested grievance forms on several occasional from SCDC officials. However, they refused to provide me the forms. Kirkland CI didn't have the grievance forms and no kiosk," nor did the Kirkland Infirmary. But, as the Magistrate Judge notes, Ford was shortly thereafter transferred to Perry Correctional Institution, on June 7, 2016, and the record contains no evidence that he requested a form at that point

9

despite kiosks being available there. Construed in a light most favorable to Ford, the reasonable fact finder would not conclude that Ford exhausted the administrative process in these circumstances. As a result, Defendants' motion for summary judgment as to Ford's federal claims for failure to exhaust is granted.

The Court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. The Court has "wide discretion" to do so. *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n.4 (4th Cir. 2006). In declining to exercise supplemental jurisdiction, the Court considers "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). Here, there is no indication that remanding the state law claims would inconvenience or unfairly prejudice the parties, nor does the Court find any underlying issues of federal policy involved in these state law claims. Therefore, the Court declines to exercise supplemental jurisdiction and remands to state court Bartlett's causes of action for injunctive relief under South Carolina law and for violation of the SCTCA.

### 4. Plaintiff Cedric Robinson

Mr. Robinson alleges that "on or about May 2016," he was stabbed by inmates while waiting outside his cell for a correctional officer to unlock the door, and that after his hospital treatment he was returned to Lieber not in protective custody despite complaining that his fellow inmates were his crime victim's family members. On April 30, 2016, Robinson submitted a kiosk request that he be kept in S-B because he was "moved from E-A because I was assaulted and injured." On May 1, 2016, Robinson filed another kiosk request that although his stabbing was by a "guy in room 6," he had heard someone in room 33 was charged, and the Warden should "please look into it and see what you can do, this is only causing more conflict for me."

On May 2, 2016, the Response Request stated, "You need to contact Ms. Bachman DHO. Send her a paper request." Robinson affirms that on April 30, 2016, he submitted a grievance to Warden McFadden stating he was assaulted and did not feel safe, and another grievance on May 2, 2016 stating he was stabbed. But Robinson also affirms that he requested, but was denied, grievance forms on several occasions.

There is no evidence that Robinson filed a Step 1 Grievance. Although kiosks were available to him, and he appears to have used them to complain of his assault, he did not use them to complain of Defendants' practices alleged to have enabled the assault. As the Magistrate Judge concluded, a reasonable fact finder would not conclude from this record, construed in a light most helpful to Robinson, that he exhausted all administrative remedies on this claim. Accordingly, Defendants' motion for summary judgment as to exhaustion of Robinson's federal claims is granted. The Court in its discretion declines to exercise supplemental jurisdiction over Robinson's state law claims, which are remanded to state court.

### IV. Conclusion

For the foregoing reasons, the Court **ADOPTS** the R & R (Dkt. No. 31) as the order of the Court. Defendants' motion for summary judgment for failure to exhaust administrative remedies (Dkt. No. 3) is **GRANTED IN PART and DENIED IN PART**. Summary judgment is **GRANTED** as to Plaintiffs Chris Ford and Cedric Robinson, and **DENIED** as to as to Plaintiffs Brandon Bartlett and Keith Simpson. The Court **REMANDS** to state court the state law claims brought by Plaintiffs Chris Ford and Cedric Robinson.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 7, 2019
Charleston, South Carolina

11