IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Brandon Bartlett, | ) | Civil Action No. 2:17-03031-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| South Carolina Department of Corrections, et. al.; | ) | |
| | ) | |
| Defendants. | ) | |

This action has filed by Plaintiff pursuant to 42 U.S.C. § 1983 and the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 *et seq.*[1] (Dkt. No. 1-1.) On February 5, 2020, the undersigned issued a Report and Recommendation recommending granting in part and denying in part Defendants' Motion for Summary Judgment. (Dkt. No. 135.) That same day, the undersigned issued the following Text Order:

> The Court finds that the Roth Report should be filed on the docket because Plaintiff relies upon it in opposing summary judgment. To the extent Defendants oppose such a filing, they must file a brief with supporting argument by February 14, 2020. In this brief, Defendants should specify whether they believe the Report should be sealed entirely or filed with certain portions redacted. If they believe redaction is appropriate, they must specify which portions they seek to redact. Any responsive brief by Plaintiff must be filed by February 20, 2020.

(Dkt. No. 136.)

---

[1] This is one of the many actions currently before the undersigned that have been filed by Plaintiff's counsel concerning inmate violence and understaffing at SCDC. *See*, *e.g. Battle v. SCDC et al.*, 2:18-cv-719-TMC-MGB; *Dexter Crawford v. SCDC, et al.*, 6:18-cv-2407; *Craig Ellerbe v. SCDC, et al.*, 6:19-cv-96; *Jamarcus Murray v. SCDC, et al.*, 6:19-cv-100. On August 13, 2019, the undersigned held a Global Status Conference, in which counsel in all the cases within this category appeared. (Dkt. No. 90.)

1

The parties have filed their respective briefs (Dkt. Nos. 139; 140) in response to this Text Order. For the reasons stated below, the Court finds the Roth Report must be filed, unredacted, in this case.[2]

## INTRODUCTION

The relevance and discoverability of the Roth Report ("Roth Report" or "Report") has been discussed at length both by the parties and the Court throughout this action. (Dkt. Nos. 67; 79; 104; 109; 110; 114; 115; 117; 133.) As discussed extensively in past Orders, the Roth Report was drafted by Tom Roth in March 2018 in connection with a confidential settlement of another case against SCDC (the "Mental Health Settlement"). The Roth Report focuses on staffing levels at SCDC and analyzes the impact of staffing levels on incidents of contraband and assaults at certain SCDC institutions. In past Orders, the Court has expressly found the Roth Report relevant and discoverable and has expressly rejected most of the substantive arguments put forth by Defendants in their instant brief.

Specifically, in their brief, Defendants "seek protection for the Tom Roth report pursuant to Fed. R. Civ. P. Rule 26(b)(1), FRE 501, SC ADR Rule 8(a)(2) and SC ADR Rule 8(a)(5)." (*Id.* at 12.) Defendants also assert that the Report is protected under the work product doctrine. (*Id.*) In an Order issued July 10, 2019, the District Court expressly found that "[t]he Fourth Circuit has not imposed a settlement privilege with respect to discovery" and that "the work-product privilege does not apply to the Roth Report." (Dkt. No. 79 at 4.) Further, on September 25, 2019, the undersigned issued an Order explaining in detail why each of the above authorities cited by Defendant does not warrant protection of documents pertaining to the Roth Report—the Court will

---

[2] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(d), D.S.C., this matter has been assigned to the undersigned for all pretrial proceedings.

not repeat this analysis here and instead incorporates in its entirety the reasoning put forth in the September 25, 2019 Order.[3]

With these past rulings, the question squarely before the Court at this time is whether it is appropriate to seal the Roth Report—its relevance and discoverability has already been decided in Plaintiff's favor by the Court. Here, Defendants assert that "less drastic alternatives to sealing the Roth report, such as redaction, do not afford adequate protection of the mediation/work product document." (Dkt. No. 139 at 8.) Plaintiff argues that "Defendants have failed to make a persuasive argument as of why the Roth Report cannot be filed in support of Plaintiff's claims and any protections afforded by not filing this document have been negated as the Court has already determined that no privilege or confidentiality exists." (Dkt. No. 140 at 7–8.)

## DISCUSSION

Local Civil Rule 5.03 provides that a party seeking to file documents under seal shall "file and serve a 'Motion to Seal' accompanied by a memorandum" that must:

> (1) identify, with specificity, the documents or portions thereof for which sealing is requested; (2) state the reasons why sealing is necessary; (3) explain (for each document or group of documents) why less drastic alternatives to sealing will not afford adequate protection; and (4) address the factors governing sealing of documents reflected in controlling case law.

Local Civil Rule 5.03, D.S.C.

The public's common law right to inspect judicial records and documents is not absolute and the district court "may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597

---

[3] For example, in this Order, the Court expressly addressed why Local Civil Rule 16.08, Fed. R. Civ. P. Rule 26(b)(1), FRE 501, and South Carolina Alternative Dispute Resolution Rule 8 did not warrant protection of certain communications between Tom Roth and SCDC and the underlying documents Roth reviewed in making his Report. The undersigned also found that the United States Supreme Court case, *Jaffee v. Redmond*, 518 U.S. 1 (1996), did not compel "recognizing a settlement privilege in this instance." (Dkt. No. 117 at 7.)

(1978). In deciding whether to exercise such discretion, the court may consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

The Fourth Circuit Court of Appeals has set forth the following standard and procedure that must be followed before a district court can seal documents:

> In *Knight*, we explained that, while a district court "has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests," the "presumption" in such cases favors public access. *Knight*, 743 F.2d at 235; *see also* [*Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)] ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances"). Accordingly, before a district court may seal any court documents, we held that it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. *See Knight*, 743 F.2d at 235–36; *see also Stone*, 855 F.2d at 181. These procedures "must be followed when a district court seals judicial records or documents." *Stone*, 855 F.2d at 179–80, 182.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).

Here, Defendants argue that "[r]estriction of information otherwise publicly available is warranted" here because "[p]rotecting this information would ensure that the process of SCDC improving its facilities according to its responsibilities under the Mental Health Settlement could continue unimpeded." (Dkt. No. 139 at 9–10.) More specifically, Defendants assert that "[r]equiring Defendants to produce information compiled in SCDC's efforts to comply with the Mental Health Settlement would hamper the process and the ability of SCDC to participate in truthful, meaningful, and critical evaluation of the strengths and weaknesses of its facilities in an effort to make improvements to facilitate greater safety in those same facilities. (*Id*. at 10.)

4

Defendants further contend that "production would hinder the ability of parties to participate in such settlements in the future." (*Id*. at 11.)

In support of these arguments, Defendants cite three cases which are inapplicable to the instant matter. (Dkt. No. 139 at 9–11.) Defendants first cite *Pierce Cty., Wash. v. Guillen*, 537 U.S. 129, 144 (2003), in which the United States Supreme Court held that a federal statute protecting certain documents from discovery and admission into evidence created an evidentiary privilege. In *Guillen*, the Court interpreted the scope of a specific federal statute and found certain information should be protected from discovery in light of the statute. *Guillen*, 537 U.S. at 146–48. *Guillen* is inapplicable here where there is no federal statute protecting the information at issue and where the information has already been found discoverable. Defendants also cite *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001), in which the United States Supreme Court considered the applicability of a certain exemption to the Freedom of Information Act ("FOIA") to the "disclosure of records held by a federal agency." The Court found that invoking this exemption to claim privilege in discovery "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 8–9. *Klamath* is inapplicable here where Defendant is not a federal agency and the particular FOIA exemption is not at issue.

Finally, Defendants cite *In re for Wilson*, No 8:12–CV–02078–JMC, 2017 WL 2536913 at *1 (D.S.C. June 12, 2017), in which the court declined to vacate a prior protective order as requested by "an interested party" to the action. In so ruling, the court emphasized that the documents at issue in the protective order "were not created or submitted to the court for the purpose of disclosing discoverable information to any party, and . . . it is not clear what, if any, relevance the documents have for [the interested party's] defense" in a related action. *Wilson*, 2017

5

WL 2536913 at *3. Here, the Roth Report has been produced in discovery and has been found relevant to this action. *Wilson* is therefore inapplicable.

While the Court recognizes Defendants' concerns about the need for privacy in settlement proceedings, the Court has already held that the Roth Report is only tangentially related to the Mental Health Settlement. (Dkt. No. 67 at 2.) Likewise, the Court has found that the Roth Report "is not covered by the confidentiality provisions of the Mental Health Settlement." (*Id*.) Given these findings, the Roth Report's limited connection to the Mental Health Settlement does not compel sealing the Report. Further, as the District Court noted, "a lightly redacted version of the [Roth Report] has previously been disclosed via a FOIA request and reported on by the Post and Courier." (Dkt. No. 79 at 5–6.) Thus, it appears that significant portions of the Roth Report are already available to the public. Also, while the Court has previously stated that the Roth Report is subject to attorneys' eyes only, that finding was in the limited context of the discoverability of the Roth Report. Such Orders were not intended to limit what can be included in the record. Finally, the Roth Report details security concerns at SCDC, and there is great public interest in the safety of taxpayer funded government institutions.

Based on the foregoing, Defendants have not provided any compelling reasons, in accordance with Local Rule 5.03 D.S.C., that would support the drastic measure of sealing the Roth Report. The Court therefore orders Plaintiff to file the unredacted version of the Roth Report on the docket by February 28, 2020.

## CONCLUSION

For the foregoing reasons, the Court finds no basis to seal the Roth Report. Plaintiff is ORDERED to file the unredacted version of the Roth Report on the docket by February 28, 2020.

**IT IS SO ORDERED.**

February 25, 2020
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE